UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SARAH RUSSELL, o/b/o K.C.,

    Plaintiff,

v.                          CASE No. 8:07-CV-2373-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments on behalf of her young daughter.[1] Because the plaintiff has failed to demonstrate that the decision of the Commissioner of Social Security contains reversible error, the decision will be affirmed.

I.

Keturah L. Crawford, was born on August 19, 1994, and was twelve years old at the time of the administrative hearing (Tr. 51). The

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

plaintiff, who is the child's mother, has filed a claim for supplemental security income. She alleges that the child is disabled due to attention deficit hyperactivity disorder, depression, mental problems, low self-esteem, and developmental conditions (Tr. 85). The claim was denied initially and upon reconsideration.

The child's mother, at her request, then received a de novo hearing before an administrative law judge. Following the hearing, the law judge found that the child has no severe impairments and is malingering to obtain disability benefits (Tr. 16). The law judge concluded further that the child does not have an impairment which meets, or equals, "one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (Tr. 17). The law judge also found that "[t]he claimant does not have an impairment or combination of impairments that functionally equals the listings" (id.). The law judge, therefore, determined that the child was not disabled (Tr. 23). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In 1996, the Social Security Act was amended with respect to the eligibility for child's disability benefits by tightening the criteria. As amended, the Act now provides (42 U.S.C. 1382c(a)(3)(C)(i)):

> An individual under the age of 18 shall be considered disabled ... if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The Commissioner subsequently issued regulations explaining how this provision would be implemented in determining whether a child is disabled. See 20 C.F.R. 416.924.

Similar to the approach taken with adults, the Commissioner assesses child disability claims under a sequential analysis. 20 C.F.R. 416.924(a). The first step is to determine whether the child is actually working at substantial gainful activity. 20 C.F.R. 416.924(b). If not, the second step asks whether the child has a severe impairment. 20 C.F.R. 416.924( c). If she does not, the child is considered not disabled. Id. If there is a severe impairment, the third, and final, step in the analysis is to determine

whether the child has an impairment that meets, medically equals, or functionally equals, a set of criteria in the Listing of Impairments in Appendix 1. 20 C.F.R. 416.924(d). If the child does, then she is deemed disabled. 20 C.F.R. 416.924(d)(1). If she does not, then she will be found not disabled. 20 C.F.R. 416.924(d)(2).

As with claims by adults, a determination by the Commissioner that a child is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is

the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The law judge found that the child did not have a severe physical impairment. The plaintiff does not challenge that finding.

The law judge also found that the child did not have a severe mental impairment and was malingering in an attempt to obtain disability benefits (Tr. 16). The plaintiff challenges that finding (Doc. 23). The finding that the child was malingering is supported by the reports of two examining psychologists.

The Social Security Administration sent the child at age nine to Dr. Gerald Mussenden for a psychological evaluation.[2] Dr. Mussenden attempted to give the child an intelligence test and an achievement test (Tr. 158). With respect to the intelligence test, Dr. Mussenden reported (Tr. 159):

> These scores are all invalid and reflect Keturah's efforts to sabotage and/or give incorrect answers. While the ability was present, she would not respond appropriately to the testing. Examples of this can be seen by the fact that when asked to touch her nose, she touched her forehead; when asked how many ears she has, she showed three fingers; when asked how many legs a dog has, she presented five fingers; and continued in this fashion.

As to the achievement test, Dr. Mussenden stated (id.):

> On this test she demonstrated the same types of behavior she did on the intelligence test. She would give incorrect answers deliberately.

Dr. Mussenden said further that, "[i]n reference to overall mental status, this becomes extremely difficult to evaluate because she basically manifested a selective mutism meaning that she was not verbally responsive to the examiner" (id.). Dr. Mussenden noted that the child's "past psychiatric

---

[2]The plaintiff points out that the law judge referred to Dr. Mussenden as Dr. Mussender several times. It is noted, however, that, due to the quality of the copying on page 158 of the transcript, the psychologist's name appears to be spelled Mussender (Tr. 158).

record indicated that she was verbally responsive and to some degree was able to discuss thoughts and feelings" (Tr. 160).

At the hearing, the child, upon questioning by her lawyer, admitted that she had deliberately given "silly answers" (Tr. 324). She said she did so because Dr. Mussenden was "annoying" or "aggravating" her (id.). As Judge Posner stated in similar circumstances, "[a] prickly temperament is not an asset in seeking benefits; as a result of [the claimant's] refusal to cooperate, he failed to obtain the test results that he needed to establish his disability." Pearce v. Sullivan, 871 F.2d 61, 64 (7th Cir. 1989).

In light of the child's lack of cooperation, Dr. Mussenden recommended that the child be re-evaluated by a different psychologist to determine if she would respond appropriately (Tr. 160). As a result, the Social Security Administration sent the child (at further expense) to Dr. Steven F. Wu for another psychological examination. Dr. Wu fared no better.

Dr. Wu stated in his report (Tr. 173):

> Although I have no solid evidence to prove this, I get the distinct clinical impression that this may be a case of *Munchausen By Proxy* or malingering whereby mother is endorsing psychiatric symptoms in her child in order to obtain additional disability benefits. A number of factors going into this clinical impression include mother's behavior, the

> new Suburban SUV that she was driving (a rather
> expensive vehicle), and Keturah's selective mutism
> and oppositional-defiance that seemed more like
> deliberate malingering rather than true psychiatric
> disturbance.... As with Dr. Mussenden, she
> exhibited selected mutism, which seemed not a
> psychiatric disorder but rather selective defiance....

Dr. Wu stated in his Summary and Conclusions (Tr. 174):

> My suspicions are raised in this case. Clinical
> intuition tells me that this may be a case of
> malingering by proxy by the mother to obtain
> additional social security disability.

The reports of these two examining psychologists provide substantial evidence in support of the law judge's finding that the child was malingering. The plaintiff does not challenge that finding. Rather, she asserts that "the record contains sufficient evidence and diagnoses to establish Plaintiff met her mild burden of proving that she [sic] had a severe mental impairment" (Doc. 23, p. 11). That assertion, however, is beside the point.

The plaintiff had the burden to prove that the child had a severe impairment. Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). In this case, while the evidence mentioned by the plaintiff might have supported a finding of a severe impairment, it did not compel it. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027. Accordingly, the law judge could reasonably

conclude that, in light of the finding of malingering (which is unchallenged), the evidence of a severe impairment was suspect and inconclusive, and that the plaintiff had therefore failed to carry her burden of proving a severe impairment. Cf. Pearce v. Sullivan, supra, 871 F.2d at 64.

Furthermore, even if the law judge erred in finding that the child did not have a severe impairment, the plaintiff has failed to show, or even argue, that the error would warrant reversal. Importantly, although the law judge concluded that the plaintiff had not made the showing of a severe impairment at step two of the sequential analysis, he did not stop at that point. Rather, he proceeded on to step three and found that the child did not meet, medically equal, or functionally equal, a listed impairment (Tr. 17).

The plaintiff, on the other hand, did end her argument with the challenge to the finding at step two of no severe impairment (Doc. 23). Significantly, the plaintiff was warned in the scheduling Order that she had to "identify with particularity the discrete grounds upon which the administrative decision is being challenged," that the grounds "must be supported by citations to the record of the pertinent facts," and that the failure to do so could cause her argument to be disregarded (Doc. 16, p. 2).

Consequently, the plaintiff's failure to develop any argument showing that the law judge erred in his alternative finding at step three defeats her claim.

It is appropriate to add that, from all that appears, a challenge to the law judge's findings at step three would fail. The record contains no evidence showing that the child meets, or medically equals, a listing in Appendix 1. Furthermore, the evidence does not demonstrate that the child functionally equals a listing.

If a child does not meet, or medically equal, a listing, the plaintiff can nevertheless demonstrate a disability by showing that the child functionally equals a listed impairment. 20 C.F.R. 416.926a. Functional equivalence can be established by demonstrating that the child has a marked limitation in at least two of six domains of functioning or an extreme limitation in one such domain. 20 C.F.R. 416.926a(a). A marked limitation is one that interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(2)(i). It means a limitation that is more than moderate, but less than extreme. Id. An extreme limitation, which is the rating given to the worst limitations, is one that interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(3)(i). The six domains

of functioning are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for herself, and (6) health and physical well-being. 20 C.F.R. 416.926a(b)(1).

The law judge concluded that the child has no limitations in any of the domains (Tr. 19-23). The plaintiff has not challenged any of these findings and, in fact, mentions the domains only in a summary of the pertinent provisions of law (Doc. 23, p. 6). Consequently, any challenge to the findings regarding the domains is deemed abandoned.

In all events, any challenge on the issue of functional equivalency would fail. The law judge set forth brief explanations for finding no limitations in the four domains as to which there could be any question.[3] The plaintiff, as indicated, has not challenged any of those explanations.

Furthermore, the most favorable evidence regarding the six domains comes from one of two nonexamining reviewing psychologists. Thus, Arthur H. Hamlin, Psy.D., opined that, in the domain of acquiring and

---

[3]No explanation was given for findings of no limitations in the domains of moving about and manipulating objects, and of health and physical well-being, because, in light of the child's activities, such as cheerleading, soccer, and swimming (Tr. 162, 190, 236) and the lack of a severe physical impairment, no explanation was necessary.

using information, the child had a marked limitation (Tr. 177). He indicated that, in the other domains, the child was either less than marked or had no limitations (Tr. 177-78). Another reviewer, Timothy D. Foster, Ph.D., indicated that the child had no marked or extreme limitations (Tr. 168-69). Thus, even if the law judge had accepted Dr. Hamlin's opinion of one marked limitation, a claim of functional equivalence would fall short.

In sum, the law judge could reasonably conclude that the plaintiff had failed to carry her burden to show that the child had a severe impairment. Moreover, even if that determination were erroneous, the plaintiff cannot demonstrate that the law judge's further finding that the child's condition does not meet, medically equal, or functionally equal, a listed impairment was erroneous, and, in fact, the plaintiff has made no attempt to do so.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby **AFFIRMED.**

The Clerk is directed to enter judgment accordingly and to **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 27th day of February, 2009.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE